So, you ready to proceed? We are, Your Honor. Go ahead. Mr. Groschinsky? Yes, yes, Your Honor. May it please the Court, Chairman Groschinsky, on behalf of the Appellant, Virginia Innovation Sciences. The District Court's summary judgment ruling in this matter on infringement was based entirely on an improper construction of the term display foreman. There is absolutely no support in the patents in suit for the District Court's construction. There's no support in the file histories. Throughout the entire intrinsic evidence at issue in this case, there's no support for that construction. Samsung hasn't identified any support from the intrinsic evidence in support, and the District Court didn't identify any in its order. Setting that aside, the same construction that the District Court adopted for display format, it doesn't just exclude the preferred embodiment that's in the patents in suit. It excludes every single embodiment that's present in the patents in suit. Because each of the identified display formats, not just HDMI, but the others as well, do require some processing once the signal has entered the display device processing that could be described with the District Court's words of deconstruction and reassembling. That's correct. That's the point. That's correct. Do you equate the phrase deconstruction and reassembly with further processing? I do. Is that the way the District Court used it? I think that when you are, let me make sure I fully understand, when you are doing deconstruction and reassembly, okay, as I understand that, what I understand it to mean from the District Court, I think that is going to be further processing that's done at the alternative display. I don't think that the terms deconstruction and reassembly don't appear anywhere in the intrinsic evidence. I don't think that those are terms of art in this technological space. The District Court adopted those terms, and I understand those to mean, essentially, you have a situation where you have some form of decoding, I'm hesitant to use that word because I think that is a term of art, but some form of decoding of an incoming video signal. And then you're going to have a decoded signal at that point, or a deconstructed signal. And then it's going to be either reassembled or re-encoded into a different signaling format. And the District Court's order, and I think we're all on the same page, but the construction was not just a format that requires decoding, but he goes on and he says, but deconstruction and reassembly after it's received by the alternative display, that can't be a display format. And so we have a negative construction we're adopting where we're carving out certain formats, we're saying these can't be display formats. And using HDMI as an example, because that's the exemplar display format that the District Court adopted, and that's throughout the preferred embodiment and the patents in suit. When HDMI is received by an alternative display, there absolutely, before that can be displayed on a TV, there has to be deconstruction and reassembly of that signal. What happens is it gets received by the TV, and then you have HDMI, there's three parallel data channels coming across in a clock channel. And then those are deconstructed into raw pixels or raw bits, okay? And then those raw pixels and bits are then reassembled into what's known as low voltage differential signaling, which is ultimately what a television would display. I'm using an LCD television as an example. And so in that context, in the preferred embodiment, in the patents in suit, you have deconstruction and reassembly. And what the District Court was focusing on is he's saying, okay, MHL is coming in, and that's a serial format. And so we have one piece of data after another in a serial fashion, there's only one line, if you want to think of it that way. When you look at HDMI, setting aside the clock channel, you have three data lines coming in and they both use TMDS encoding. You can almost think of it as HDMI parallel and HDMI serial is the two. But even in the parallel format, your honors, of HDMI, when you have the three lines, take one of those data lines and isolate it, disregard the other two for a second. The data that's coming across in that one line is coming across in a serial fashion. You have packet after packet after packet after packet that are all coming across serially. And so when a single data line gets received from HDMI, that serial data line has to be deconstructed. That's the only way you can get into a raw data format. And then that serial data line that's now deconstructed has to be rearranged or reassembled before it can be displayed. The point I'm trying to make is that in HDMI, which we all agree is an exemplar display format and the patents ensue, if you adopt the district court's construction, you exclude that. So let's just assume, at least for purposes of this question, that the deconstruction reassembly requirement is not right. What is the correct interpretation of this quite broad term display format? VIS, that's a referring to Gene Yovation's VIS. Our position on that, your honor, is that it should be a decompressed encoded video signal. Where does decompressed and encoded come from? Why does the language and the specification not cover essentially any signal that any display device out there might use with whatever equipment it needs in order to translate that signal into a series of pixel lightings on the screen? I actually don't agree with you with respect to that being the plain ordinary meaning of the term display format. I think that that's an accurate description of the plain ordinary meaning of the term. And this court's precedent tells us there's only two instances to deviate from that lexicography or disclaimer. Now one of the issues that Samsung has raised is they're saying that we have a new construction out here on appeal and this is a shifting sands type situation. It's not. What happened was early on in this case, and I mean unless this is really relevant, I must say I could not follow all of the debate about who said what first. So I'm really interested in your telling me why, putting aside who said what first and when, what the correct construction is. A decompressed encoded video signal that is different from the mobile terminal signal originally received, that is the verbatim proposal that is set forth by VIS. And the basis for that in the intrinsic evidence is a statement that was made three times during the prosecution history of the 492 patent that Samsung has argued was a disclaiming statement. And the district court in its opinion agreed and found that VIS engaged in disclaimer by making the statement. And the statement is, applicants claimed invention deals not only with mere decoding of a compressed video signal. And I'm going to pause for a second. That's where I get decompression from. Right. My question, I guess, is this does not seem to be a statement specifically about the language display format. It seems to be a statement about either the invention or even claims as a whole, which have a lot more words in them than just display format, including converting and other things. Where does one get, how does one get from this to a definition of display format, putting aside the other claim language that involves decompression and something else? The issue, for example, if you took what you had originally stated as display format, there's any format that could be displayed by an alternative display. I know I'm paraphrasing what you stated. That would, in my opinion, cover a compressed format. So MPEG-2 or MPEG-4, for example. This statement from the prosecution history, as well as throughout the patents in suit, clearly disclaim and state that the outgoing video signal from a mobile terminal must be in a decompressed format. And so from our, and that was our position in this case very early on, is that a display format must be a decompressed signal format. Right. But you're saying the claim, we should read the claim as saying, taking a video signal at the mobile phone that's in a compressed format and it's converted into a decompressed format, right? That's correct, your honor. But it doesn't say decompressed format in the claim. It says a display format that's appropriate for display on the alternative display terminal. That's correct. So when we go back to your spec, we see examples of what are display formats. There's S-video, there's RGBS for analog TVs, there's DBI and HDMI and other things for digital TVs. And so the whole point there is to demonstrate that what we're looking at are this whole interface module is designed to format the signal received at the mobile phone so that it's ready for use at the alternative display, at the TV. If that TV is digital, then that's HDMI or DVR is one of those. If it's an analog TV, then we're doing RGBS or something else. But we're not just plainly sending over any decompressed data. You have to get it into a format that is ready for use for the TV. I agree with the majority of what you said. I'm hesitant to agree with the ready-for-use language just because that appears to have gotten me into some trouble in this case so far. And what I mean by that is we use ready-for-use early on in the briefing in the context of referring to decompression. And we are analogizing that from a compression to decompression, saying if it's decompressed, it's ready for use, meaning you don't have to decompress it at the alternative display. And I think that that's been twisted. I know it has up to this point. Now, that just doesn't mean it's decompressed. That means that nothing has to happen at the alternative display. It's just ready to go. If what we're talking about here is it's ready for use, meaning it's decompressed or it can be used, I would agree with that. Well, ready for use, as in any TV in America, could handle whatever is being outputted from this interface module. Or there's at least one TV in America that can handle whatever is being outputted from this interface module. I agree with that. So if that interface module is outputting HDMI, yes, we know there are several TVs that can handle that. I would agree with that. And in the same token, there are several monitors and televisions that can handle MHL as receiving an MHL signal and then doing some processing and displaying it. With respect to the decompression component, though, and that was adopted by the district court, and you all may or may not agree with that, but I believe it was correct to find that a display format, or what's output at least, must be a decompressed display format. And I think that the prosecution history tells us that. Even if we're going to assume that this statement isn't necessarily defining display format. I do think that it's clearly stating that what leaves the television, or I'm sorry, the mobile terminal, must be in a decompressed format. Every exemplar display format listed is all, those are all decompressed. I grant you that it says exemplary, but they're all decompressed formats. Just so you're aware, you're into the rebuttal time. And so, just to simply end, I mean, with respect to it, that's the basis for our proposal. And there is no support for the district court's construction, and it would exclude all embodiments if it was adopted. May it please the court, George Riley, I represent the appellee and defendant, Samson. The district court's construction is clearly correct and supported by the intrinsic evidence. We're talking about display format now, or converted signal? There are two constructions that are kind of in play here, right? That is correct, and they operate together. Display format, I'd like to turn to that. And Your Honor, the reason there was a clear and unambiguous disavowal, which is critical, and I believe goes to some of the points that Judge Chen were making, is that they had to, in prosecution, distinguish their alleged invention against a prior art, several prior art inventions, Lee, Hynonen, and others. And what those inventions did, some of them were set-top boxes, where they took a compressed video stream, they decompressed it, then they decoded it and processed it the way a typical video stream is processed. They call it conventional processing, and it produced video on an external display. In order to overcome a rejection based on that prior art, they said, no, no, no, our invention is more than mere decompression and conventional processing. Our invention takes a format that is suitable for the mobile device and converts it into a different display format. And so the concept of display format comes to the fro here, because it's at the very essence of what they've claimed. And what they do in the four claims at issue, which is important in understanding why Judge Davis focused on the hand set, is that some of their claims would read where the conversion occurs in the television set itself. Some of their claims would read where there's an external device, like a set-top box, so you have a phone, set-top box, TV. And some would read where you have components that do the conversion in different places, which is sort of what they're trying to do now. But the claims that they've asserted, and there's no dispute about this, the claims they've asserted, the entire conversion to display format occurs on the mobile device. All right, so I'm sorry, so what's a display format? A display format is a decompressed format that is ready to use. I guess my difficulty is, I don't know what this phrase ready to use means. We can look to the prosecution history. Ready to use means that... No processing inside the display box. The conventional processing that's required. Convention. That's the term that the patentee used. Conventional processing. And Your Honor, this is... I didn't see anywhere in the prosecution history that said, when we use the term display format, we are talking about a converted video signal that's ready for use by the alternative display in which there's mere de minimis conventional processing that happens at the tail end that any alternative display terminal would use. It doesn't say it like that. It doesn't say it like that, Your Honor. Correct. But at 53... Or something that's clean enough that leads me to that conclusion. I believe it is clean enough to lead to that conclusion, and it's at 5304, where they're distinguishing the combination of Li and Hinonen, where they're saying, our invention is not merely decoding and conventional processing to take a compressed video stream and display it on an external device. Ours is conversion. It decompresses and converts. Decompresses and converts. Well, decompresses is part of the conversion, isn't it? Actually, the claims themselves and the specification speak of decompression as a separate step. If you look at Figures 3 and Figures 4, they actually have a separate step where they call decoding or decompression, and then they have the conversion step, as Your Honor was referring to converting it, say, into an analog format or converting it a digital format, like 1394 or DVI, or in this case, HDMI. But what the district court here did is say something about how deconstruction and reassembly, you can't do that to a display format. And the logic for that, Your Honor, follows from the same logic that applies to decompression. If we think about what happens in compression, we have an algorithm that looks at our lines of ones and zeros and says, well, let's insert a code word for a certain series of zeros. So we've compacted it. We've compressed the bit stream. Then when we decode it or decompress it... Let me just tell you what my problem is right now, okay? I mean, what we have when you get to HDMI, there's a certain amount of processing going on, right, in a conventional TV transmission. And then what we have here going from MHL to HDMI, there's some processing going on there, clearly. When we go from HDMI to actually seeing the pixels lighting up, there's yet some additional processing. And so there's processing going on everywhere. And I'm not so convinced that the district court's construction cleanly cleaves away what is good processing from impermissible processing in terms of understanding how this claim works. Do you see my concern? I do, Your Honor. And I think that that concern is answered in the court's very detailed discussion of decompression. If you agree that decompression is outside of this, that they've disavowed that. What happens in decompression... I'm sorry, what do you mean by disavowed decompression? I'm sorry. Their conversion to a display format is more than mere decompression. Are we now switching to the different term converted signal from display format? No, it's display format. But to get to the display format, you have to take a initial signal and convert it to a display format. Part of what I've had difficulty here with is whether there are two separate claim constructions at issue or what. And the district court clearly thought in the invalidity order that some claims that referred to compression meant one thing and some claims that didn't refer to compression meant another thing. And what we have is a claim construction of display format and a separate, extremely broad claim construction of converted signal, which is the validity issue. And they proposed the very broad construction. But display format, you said they agreed that it did not cover what? A signal which is merely decompressed. And that is why in their own proposed construction, they say it's a decompressed signal that is encoded and different than the original signal. So a display format has to be decompressed, but also is limited in an additional way. Correct. It has to be ready to be used as we discussed earlier. I'm sorry for the detour. When the district court says at one point that converted video signal comprises display format for the alternative displaced terminal, it says an uncompressed format must occur prior to the transmission. In all of the asserted claims, correct. But when it's discussing invalidity and the anticipation, it says decompression is not necessary prior to transmission to the alternative display format. Why? And I'm glad you asked that question, Your Honor. He is speaking of claim 21 of the 268 patent. Claim 21 is indifferent about where the actual decompression occurs. Again, in the specification, there are embodiments where part of it occurs in the mobile device, part of it occurs in the television set. So he's talking about, Judge Davis is talking about claim 21, which he held invalid. That is not one of the asserted claims. 27 is an asserted claim, which does require decompression prior to transmission. Thank you, sir. So that is the difference. The term converted signal, in your mind, talking about the same thing as the display format? No, Your Honor. In the claim construction that was adopted, we didn't agree with this claim construction. Convert simply means a change. And so what the... Right. But I'm saying as this claim in 492 as well as the 711, it's referencing a converted signal, it's referencing a display format. The converted signal is the outputted signal. That is correct. And what the outputted signal is the display format. Yes. At the end of the claim, when it's... About transmitting the converted signal. So that's why I'm asking you, as the claim is written, why isn't the converted signal the same thing as whatever the thing is that's the display format? It is at that part of the claim because the antecedent to converted signal is the creation of the display format, which is different from the initial signal. So you've got a signal, you convert it into a display format, and then you transmit the converted signal. And I agree completely, at that point, the converted signal is the display format. So if it's the same thing, and then we have an interpretation of one of those two things to be a changed signal, and then we have an interpretation of the other thing, i.e. the display format as some signal that cannot be further processed. No. At the point when you're transmitting it, you have an antecedent, which is the display format. So the converted signal, when you're transmitting it to the auxiliary or external device, is now in a display format. And the reason that this is important gets to your question, Judge Chen, about external displays. In this patent, they say, yeah, you could put the conversion, the reassembly, in the television set, but that would be a burden on TV manufacturers. If you put the conversion to the display format in the handset, then it would work with a standard HDMI TV, because the conversion, regardless of what the bitstream is, it's MPEG, it's whatever the bitstream is, this handheld computer will now convert it into a bitstream that can go into a TV. In the original case in this, and in fact, if you look at the judgment, they dismissed a product called the Droid Charge. And the Droid Charge... The what charge? Droid and Droid. They dismissed the Droid Charge, but the Droid Charge did exactly what you're referring to. It outputted an HDMI signal, a display format. But there were very, very few sales of that. I'm sorry, go ahead. If suddenly there were 50 million Samsung TVs out there that accepted MHL formatted signals for display, does that change whether an MHL signal is in a display format, if that's what comes out of the Galaxy device? No, it depends on how that MHL is processed, whether it's natively processed or whether it has to take the MHL and reassemble it, deconstruct it, reassemble it into something else. But then aren't we just back to this thing, which I think we keep trying to focus on. If 50 million televisions out there, conventionally, which if it's 50 million, that's conventional in some sense, do that processing. Why is that processing different from the processing currently done on 50 million HDMI accepting? Because it's a difference between my hearing French and understanding it, my hearing French and having to write it down and then translate it into English. And that's what would happen today. And the reason that this is important, in the decompression discussion, Judge Davis said, think of the Palin example. There was a Bluetooth connection. So you had to take the signal, package it up, compress it as Bluetooth, and then transmit it to the external display. That's the way it worked. Well, that's prior art. They have to avoid that. So the way they avoid that is to say, no, no, no, in compression, you have to take that signal and unpack it, rearrange it, reconstruct it, and now it's ready for display. That's the way they distinguish a compressed format from a decompressed format. And then it follows that as to Bluetooth, so to MHL, it's a transmit format. It's a transmission format that has to be unpacked and then reassembled, just as a compressed signal has to be unpacked and has sockets only for HDMI. But to get the, I guess, four signals coming in onto the screen, what's going on in there and why is that not deconstruction and reassembly? Because today what you have to do is to buy a separate converter, an adapter, put it on your screen, and then you're good to go. I'm not sure I was unclear on the question. Forget about MHL. I want to know if your Galaxy device actually had an HDMI set of connectors for them or something, and that's going into the Samsung TV. MHL is nowhere in the picture. Something is going to be happening inside that Samsung television with the HDMI signal to make the pixels light up correctly. What is that process and why is it not deconstruction and reassembly? What that process is, and to use an actual example, the Droid Charge, which was a phone they accused but dismissed, it outputs HDMI. The television can receive HDMI. What it does in all of those pixels, which are encoded in a... I'm sorry, they're not pixels. The data packets that represent the pixels. The data packets that represent the pixels are encoded in a form called TMDS. That's the signaling format. Each of those pixels is decoded and then used to drive, ultimately, the transistors that light up the flat panel display. There's no taking of the bit stream and then reassembling it the way you would for decompression or the way that you have to do with MHL. It's a direct instruction to the machine. Excuse me? It's a direct instruction to the machine. Yes, once it is translated into this low voltage signaling format. That is exactly what was going on in Lee. That's the sort of conventional... Doesn't the other side have an expert report or expert declaration that says this conversion step of HDMI to lighting up the pixels is deconstruction, reassembling? Absolutely not, Your Honor. The portions of the brief, both the opening and reply to the appellant, refer to Dr. Brophy's expert report. But actually what they do is they refer to their own brief in opposition to summary judgment. If you look at that brief in opposition to summary judgment, it says nothing about reassembly. There's an example using a crib that is purchased and reassembled. And then that in turn cites Dr. Brophy and Dr. Brophy's report at page 38 through 39. That's the record 49561. It says nothing about reassembly. It talks about this processing through a low voltage differential signaling interface. Is there any kind of, I don't know, IEEE manual or technical specification known in the art where this is the understanding of display format? You can't do any more so-called deconstruction and reassembly? I'm not... Certainly there's not in the record, and I'm not familiar with a technical definition from a treatise with regard to display format. So that's one of my concerns is I'm looking through the spec and I'm looking through the evidentiary record, and I don't see anything definitively saying that's what display format means. But the other way of looking at it is given the importance... And there wasn't really a markment hearing on this. There was, but both sides... So the summary judgment decision predicated on this kind of last second construction just for purposes of deciding summary judgment. But the judge had in front of him a set of undisputed facts, undisputed facts about how this technology operated. In undisputed fact 26, they, the players in this case, agreed with the characterization that MHL had to be reassembled. And there's nothing about... I hope you're arguing. Thank you, Your Honor. And there's nothing about reassembling with regard to any of the other true display formats that are discussed in the specification, such as DDI and HDMI. So thank you. Thank you very much. Take it up to five minutes. Thank you, Your Honor. Sean, you asked a question about whether or not there was anything in Dr. Brody's report about deconstruction and reassembly, whether HDMI does that. Admittedly, the term deconstruction and reassembly was not used. That came about in the order. And so we didn't have an opportunity. All of our briefing and expert reports was done before this concept of deconstruction and reassembly was introduced. There is a very detailed description, which I went through at higher level, about how when HDMI is received, it then gets deconstructed into the raw data and then reassembled into low voltage differential signaling. All of that is before the court in the expert report. Where is that? Is this in the Brophy period, materially around 4954 and so on? Yes, it is, Your Honor. The exact page of it starts on 4954, but more importantly, there's a diagram on 4955 at paragraph 37 of his report. This is an exemplar diagram of LCD television and what happens. You can't be serious that you think we're supposed to be able to read that. I'm not. If you go to the next paragraph, it then goes through a detailed explanation of the diagram in paragraph 38, talking about how it's first received. Then it gets processed by the digital television system on chip, which is what does the decoding. And then it gets processed into low voltage differential signaling, which is then what Judge Wallach raised. That's what actually then directly interfaces to display the picture on the television. And in what way is, I don't know if you can do this in a couple of sentences or at least not, maybe not in a way understandable to me, but in what way is the processing to low voltage differential signaling, is that the term? Yes, Your Honor. Involve either, or I guess both, either deconstruction or reassembly. I think your friend on the other side started emphasizing the reassembly part a little bit more than the deconstruction part. Before you get into LVDS, I'll call it shorthand, you have a bunch of raw data, essentially, because we've already deconstructed the incoming HDMI, and now we have a bunch of raw data. The question is, okay, how are we going to get this raw data onto the TV? We can't just take this pool of raw data and just throw it up there. There has to be some kind of organization given to it so the TV knows, okay, this is where we put this pixel and this pixel. The raw data is organized so that the TV can understand what to do with it and ultimately display it. That would be the reassembly. Right. Maybe I guess I need to go back to the step that got us to the raw data. When the HDMI signal or set of four signals are coming in, what's the process by which those bits are made into what you're calling raw data? You have three data channels in the clock, set aside the clock. Let's focus on a single data channel. We all know MHL is a single serial channel. If you take one data channel in HDMI, let's call it channel one, that's going to have data blocks, let's say 1A, 1B, 1C, 1D, onwards. When that gets received, you're going to have to deconstruct that single serial data channel. Because in each of those individual blocks, there's a bunch of data inside of those. For example, you'll have your pixel. You'll have what's known as an HV sync. It's a horizontal, vertical sync. All that's telling you is, if you think of it as a matrix on a TV, this pixel goes in row three, column B. Sync SYNCH. That's correct. My point is that when that serial data stream comes in, the television has to deconstruct it. It has to break those up, and then it's going to then process those individually. Then it's going to convert that by reassembling, reorganizing it all into low voltage differential signal. That really is no different than what happens when MHL comes in. Because when MHL comes in, you have a single serial data stream coming in. You break those packets up, and you're going to say, okay, packet 1A, you go down to slot 1. Packet 2A, go to slot 2. That's the same thing that's occurring when HDMI comes in, except it's happening three times. Because you have three serial channels coming in in parallel fashion, each serial channel is going to have to be broken up. I guess though they're saying the other side thing, what's happening with MHL is you're first converting it to HDMI before you then take the HDMI signal and do all the chop up into LVDS, as you said. That's correct. So they're not directly taking the MHL single-channel data stream and going straight to LVDS. Correct. You're not. But you could have a situation where... And so that's the distinction I think they're trying to make, that whatever they're doing, and it's called MHL, that's simply a precursor to HDMI. And HDMI is a display format. No one disputes that. And so what they have is some precursor to a display format. Well, then in that case, HDMI... ...intermediate version of what is actually a display format. Low voltage differential signal, I think everyone would agree is a display format. That's what ultimately is going to get displayed by the television. You're going to wrap up the argument. Yes, Your Honor. And my point is simply, in that context, HDMI is a precursor to a display format. And my point is simply that you could have a situation where you receive S-video, and then that gets upconverted to another format. I mean, you can have several precursors. The problem here is we're trying to draw a line around, this is acceptable size to this counsel, and there's no support in the intrinsic evidence at all to support the line that was drawn by the district court. Thank you, counsel.